UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
JABORD, INC.,

                              Plaintiff,        **MEMORANDUM AND ORDER**

                  - against -                   25 Civ. 1694 (NRB)

BEACON LLC, BRANDSTAR, INC., and MARK
ALFIERI,

                              Defendants.
------------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Jabord, Inc. ("Jabord") brought this action in New York State court on January 21, 2025, against defendants Beacon LLC ("Beacon"), Brandstar, Inc. ("Brandstar"), and Mark Alfieri ("Alfieri" and, together with Beacon and Brandstar, "defendants"). ECF No. 1 at 4.  On February 27, 2025, defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.[1]  Id. at 1. On May 2, 2025, Jabord filed an amended complaint asserting four causes of action for (i) breach of contract, (ii) account stated, (iii) unjust enrichment, and (iv) conversion arising from defendants' allegedly wrongful retention of $165,000 that Jabord had pre-paid for advertising services.  ECF No. 10 ("First Amended Complaint" or "FAC").

---

[1]    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000.  See infra Background Section.

1

Presently before the Court is defendants' motion to partially dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 14, 15 ("Mot."), 16 ("Schmit Decl.").  Defendants move to dismiss all claims against Alfieri -- the owner of Beacon and Brandstar -- on the ground that Jabord may not "pierce the corporate veil" to hold him personally liable. Mot. at 1.  Defendants also move to dismiss the unjust enrichment and conversion claims against Beacon and Brandstar as duplicative of Jabord's breach of contract claim.  Id.  Importantly, however, defendants do not move to dismiss the breach of contract or account stated claims against Beacon or Brandstar.  Id.

## BACKGROUND

Jabord is a Delaware corporation with its principal place of business in New York, New York.  ECF No. 1 at 2-3.  Beacon is a Florida limited liability corporation whose sole member is a resident of Florida.  See ECF No. 3 ("Rule 7.1 Statement") ¶ 1. Brandstar[2] is also a Florida corporation with its principal place of business in Deerfield Beach, Florida.  Id. ¶ 2.  Alfieri is the "owner, founder, and CEO" of Beacon and Brandstar, and a Florida resident.  FAC ¶ 35; ECF No. 1 at 3.

On May 11, 2021, Jabord and Beacon entered into a "statement of work" contract requiring Beacon to provide "media services" to

---

[2]    Although Brandstar is not formally a parent of Beacon, see Rule 7.1 Statement, Beacon's branding represented it as "a BrandStar Company" and the two companies are "affiliated."  FAC ¶¶ 7-8, 11.

Jabord.   FAC ¶ 13; see ECF No. 16-1 (the "Statement of Work" or "SOW").   Beacon provided two types of advertising services under the contract: (i) generating "creative" work product and (ii) arranging media buys of advertising space.   SOW at 1.   The SOW anticipated an "estimated project budget" of $678,810.00 to "run for six months," from May 15, 2021 to November 15, 2021.   Id. at 1-2; see also FAC ¶¶ 16, 19.   It also contained a "Change Order" provision, allowing Beacon to modify, inter alia, the "cost" and "Estimated Project Schedule."   FAC ¶¶ 21, 46; SOW at 1.

From June 2021 to August 2021, Jabord made payments to Beacon pursuant to the SOW totaling $368,769.   FAC ¶ 20.   However, on August 2, 2021, "in accordance with the terms of the SOW," Ravi Kumar, President of Jabord, emailed Alfieri and "requested that Beacon pause media services under the SOW and cease future spending."[3]   Id. ¶¶ 22-23; see also ECF No. 16-2 ("Change Order").   As of August 2, 2021, Beacon had actually spent $203,000 of that amount on advertising services, leaving a prepaid but unused amount of approximately $165,000.   FAC ¶¶ 20, 23.   The ensuing pause in media spending lasted "over five months" until January 2022.   Id. ¶ 24.

---

[3]    A review of the Change Order email from Kumar to Alfieri reveals that Jabord paused the media spending because it was "not able to pay for [Beacon's] services . . . until [Jabord] close[d] [its] next round of funding."  Change Order at 1.

On January 27, 2022, Forest Hagg, Brandstar's Vice President of Marketing, emailed a "Credit Memo" to Jabord, which presented options for how to spend the $165,000 in unused funds.[4]  Id. ¶¶ 24-27; see also FAC, Exhibit A ("Credit Memo") at 1-2 (recommending four alternative advertising campaigns with "video" or "no video updates" to run over "three months" or "sixth months").  However, on a date unspecified in the FAC, "[r]ather than proceed with the options set forth in the Credit Memo, [Jabord] requested that Defendants return the funds and cease further media services, thereby terminating the SOW."  Id. ¶ 27.

On December 20, 2024, nearly three years after Jabord received the Credit Memo, Jabord's counsel emailed Beacon's counsel, Patricia Klein, to "ask[] whether Beacon was willing to return the $165,000."  Id. ¶ 30.  Klein replied on January 3, 2025 that "it appears that this company is no longer in business so there is not much I can do for you at this point; Apparently, Beacon provided services to your client and this money was to be used for services."  Id. ¶ 31.  Jabord alleges that Brandstar, as of an unspecified date, also "ceased business operations" and that both

---

[4]     The parties dispute plaintiff's characterization of the disputed amount as a "prepayment."  Defendants insist that "no such prepayment was made" and that "[t]he credit memo, rather, reflects a value-added amount for potential future work, not a refund of unspent funds." Mot. at 1.  Defendants also insist that "Jabord owes Beacon approximately $300,000" and that the offer in the "credit memo" was "contingent upon Jabord's payment of the outstanding balance." Id. at 3.  However, for the purposes of this motion we must accept plaintiff's recitation of the facts as true.  Acticon AG v. China N.E. Petrol. Holdings Ltd., 692 F.3d 34, 37 (2d Cir. 2012).

4

companies are "assetless, empty shells." Id. ¶ 32. Finally, Jabord alleges that Alfieri "dominated and controlled" Beacon and Brandstar and that "[defendants] have converted the funds for Alfieri's personal and business benefit." Id. ¶¶ 32-42.

## LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), a non-movant's pleading "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [pleaded] fact[s] . . . allow[] the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." Id. A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. Acticon AG, 692 F.3d at 37. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

## DISCUSSION

Defendants advance three arguments in favor of their motion to dismiss: (i) Jabord's "conclusory" allegations are "insufficient to pierce the corporate veil" to reach the personal assets of Alfieri, Mot. at 3-8; (ii) Jabord's unjust enrichment

5

claim is precluded by the SOW and duplicative of the breach of contract claim, id. at 8-9; and (iii) Jabord's conversion claim is also duplicative of the breach of contract claim, id. at 9.  The Court will consider each point in turn.

## I.   Choice of Law

Before discussing the parties' substantive arguments, the Court must determine which jurisdiction's laws govern the claims at issue.  When exercising diversity jurisdiction, the Court applies the choice of law rules of the forum state, which in this case is New York.  Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P., 491 B.R. 335, 346 (S.D.N.Y. 2013).  "Under New York's choice of law rules, the law of the state of incorporation determines when the corporate form will be disregarded."  Id. (citation and internal quotation marks omitted).  Therefore, "[a]s [Beacon] and [Brandstar] are Florida corporations" owned by Alfieri, a Florida resident, "Florida law [would typically] appl[y] to the veil piercing claim."  Genomma Lab USA, Inc. v. Carruitero, No. 16 Civ. 6962 (GBD), 2017 WL 3911035, at *4 (S.D.N.Y. Aug. 23, 2017).  However, neither plaintiff nor defendants seem to have recognized this choice-of-law issue, and both parties exclusively cite New York federal and state case law

6

in their respective briefs.[5] See Mot. (citing only New York cases); ECF No. 17 ("Opp.") (same); ECF No. 30 ("Reply") (same).

Where, as here, "the parties rely primarily on New York law, and have not identified any conflict between New York and Florida law governing piercing . . . the Court will apply New York law to determine whether to pierce [the Florida defendants'] corporate veil and hold [Alfieri] personally liable[.]" Bogosian v. All Am. Concessions, No. 06 Civ. 1633 (RRM) (RML), 2011 WL 4460362, at *5 (E.D.N.Y. Sep. 26, 2011) (applying New York law to "a Florida corporation," and concluding "the law in Florida . . . on corporate disregard is virtually identical to New York law") (citation omitted); see also Chau v. Lewis, 771 F.3d 118, 126 (2d Cir. 2014) ("The parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law.") (citation omitted); Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (applying New York law to a Utah corporation because the "parties' briefs rely primarily on New York law for the veil-piercing analysis" and "the law of New York and Utah is virtually identical regarding piercing of the corporate veil"); Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc., 933 F.2d 131, 137 (2d Cir. 1991) (finding parties have "consent[ed]

---

[5]    The Statement of Work also includes a clause specifying that "Venue . . . lies exclusively in New York County, NY." SOW at 2. While a forum selection provision is not identical to a choice of law provision, this is further indicia of the parties' mutual intent to have New York law govern the claims.

by their conduct" to the application of New York law where "the parties have assumed from the outset that New York law governs" and where "the law in Florida . . . is virtually identical"). For the same reasons, the Court will also apply New York law to the remaining claims. See Rakower L. PLLC v. Berner, No. 21 Civ. 06439 (LTS), 2025 WL 2710423, at *5 (S.D.N.Y. Sept. 23, 2025) (applying New York law to an account stated claim because "there is no actual conflict between Florida and New York law with respect to that cause of action"); Aldabe v. Sullivan & Cromwell LLP, No. 23 Civ. 850 (ATG) (WG), 2023 WL 6566673, at *4 n.4 (S.D.N.Y. Oct. 10, 2023) ("apply[ing] New York law because both sides have cited to New York case law in their briefs" and because the elements of a conversion claim are the same in Florida); Belcastro v. Burberry Ltd., No. 16 Civ. 1080 (VEC), 2017 WL 744596, at *7 (S.D.N.Y. Feb. 23, 2017) (finding that "[u]njust enrichment under New York law is substantially the same" as in Florida).

## II.  Veil Piercing

Defendants first argue that Jabord fails to plead that Alfieri (i) "exercised complete domination and control,"[6] or (ii) used that control to perpetrate a "fraud or wrong." Mot. at 4-8. Jabord responds that it has pleaded sufficient facts that Alfieri

---

[6]    In addition to pleading that "Alfieri dominated and controlled BrandStar and Beacon," Jabord also alleges that "Brandstar exercised complete domination of Beacon." FAC ¶ 39. However, because defendants do not seek to dismiss Brandstar in the instant motion, the Court does not reach the second question: whether Brandstar dominated Beacon.

"dominated and controlled" Beacon and Brandstar and used this control to convert Jabord's $165,000 prepayment.[7]  Opp. at 5-13.

"New York law . . . allows individuals to incorporate for the very purpose of avoiding personal liability," Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979), in order to "encourage[] . . . business development," Passalacqua, 933 F.2d at 139.  "[V]eil piercing is a narrow exception to the doctrine of limited liability for corporate entities" that "courts should permit . . . only under extraordinary circumstances."  Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd., 694 F. Supp. 3d 374, 385 (S.D.N.Y. 2023) (citation and internal quotation marks omitted).  To pierce the corporate veil, plaintiff must show that "(1) the owner[] exercised complete domination of the corporation in respect to the transaction attacked; and (2) [that] such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury."  Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc., 716

---

[7]     Jabord also alleges that Alfieri may be held personally liable "[e]ven without piercing the corporate veil" for unjust enrichment and conversion.  Opp at 12-13.  While "corporate owners and officers may be held personally liable for torts they commit, without regard to whether the corporate veil can be pierced," In re A.N. Frieda Diamonds, Inc., 633 B.R. 190, 206 (S.D.N.Y. 2021), the only specific facts as to Alfieri's participation are that Alfieri "signed the SOW" on behalf of Beacon and "received" an email, Opp. at 12; see also SOW at 2 (Alfieri signed as "CEO").  The remaining allegations, most notably that Alfieri "converted the funds for his own use," are threadbare recitals of the elements unsupported by any specific facts in the FAC.  Opp. at 12-13.  We will not apply this principle of law to allow plaintiff to sidestep the requirements for veil piercing.  Moreover, the unjust enrichment and conversion claims will be dismissed because they are duplicative: "the same facts make up [Jabord's] contract claim and its conversion [and unjust enrichment] claim[s]"[7] and Jabord "seek[s] redress for . . . the same [$165,000] [in] damages."  AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc., No. 04 Civ. 8832 (KMK), 2007 WL 2962591, at *4 (S.D.N.Y. Oct. 10, 2007); see also Discussion Sections IV, V.

F. App'x 23, 27-28 (2d Cir. 2017) (quoting Morris v. New York State Dep't of Tax'n & Fin., 82 N.Y.2d 135, 141 (1993)); see also Morris, 82 N.Y.2d at 141-42 ("[D]omination, standing alone, is not enough; . . . a wrongful or unjust act toward plaintiff is required[.]").

### a. Domination and Control

Courts weigh a set of non-dispositive factors in assessing "whether an individual exercises complete domination," including:

> (1) the absence of the formalities . . . , i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm's length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd., 401 F. Supp. 3d 433, 439-40 (S.D.N.Y. 2018) (quoting Passalacqua, 933 F.2d at 139). Given the "very demanding" standard, "[c]onclusory allegations of dominance and control will not suffice to defeat a motion to dismiss." Reynolds v. Lifewatch, Inc., 136 F. Supp. 3d 503, 525 (S.D.N.Y. 2015) (Karas, J.).

Jabord only points to a limited number of facts to support its allegation that Alfieri "dominated and controlled" the

10

companies: (i) Beacon shared an office space with Brandstar and was labelled "a Brandstar Company" in its letterhead; (ii) Forest Hagg, VP of Marketing at Brandstar, sent the "Credit Memo" to Jabord; (iii) Alfieri was the owner and CEO of each; and (iv) that on unspecified dates Beacon and Brandstar ceased operating and/or became insolvent.  See Opp. at 7-8.

At the outset, indicia such as "common office space . . . and defendant's showcasing of [the other company's] [product] on its website [are] relatively insignificant."  Bd. of Managers of Gansevoort Condo. v. 325 W. 13th, LLC, 993 N.Y.S. 2d 901, 902 (1st Dep't 2014); see also Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc., No. 18 Civ. 11449 (JGK), 2020 WL 3051768, at *8 (S.D.N.Y. June 8, 2020) (finding that "[a]llegations of complete ownership, common officers and personnel, and shared office space are . . . insufficient"); Waite v. Schoenbach, No. 10 Civ. 3439 (RMB), 2010 WL 4456955, at *4 (S.D.N.Y. Oct. 29, 2010) (same).  Thus, the shared office and a reference to Brandstar in Beacon's letterhead do not justify veil piercing.

Next, Jabord argues that Hagg's January 27, 2022 email evinces that Brandstar "guarantee[d] the debts" of Beacon and "used [Beacon's] property as . . . [its] own."  Opp. at 7-8 (citing FAC ¶ 25).  The email shows no such thing.  Hagg's involvement, while not completely insignificant under Passalacqua, does not show that Brandstar, Hagg's employer, was assuming the debts or absorbing

11

the assets of Beacon, but merely that there was some overlap in the companies' operations.  This behavior does not warrant veil piercing.  See Kirschner v. CIHLP LLC, No. 15 Civ. 8189 (RA), 2017 WL 4402545, at *6 (S.D.N.Y. Sept. 30, 2017) (holding that the fact that "some entities prepared financial statements on behalf of others" and "share[d] some employees" was insufficient); Unterberg v. ExxonMobil Oil Corp., 203 F. Supp. 3d 324, 329 (S.D.N.Y. 2016) (explaining that "even [if] [defendants] hold themselves out as being a single integrated operation, controlled and managed from the [same] office[]" veil piercing is not warranted); Waite, 2010 WL 4456955, at *4 (finding allegation that companies "operate[d] at the same location and share employees, officers, owners, and bank accounts" insufficient) (internal quotation marks omitted). Moreover, "courts in this district are especially hesitant to find a disregard of the corporate form when closely-held corporations are involved."  Cohen v. Schroeder, 248 F. Supp. 3d 511, 522 (S.D.N.Y. 2017), aff'd, 724 F. App'x 45 (2d Cir. 2018) (internal quotation marks and citation omitted).  Brandstar and Beacon are closely held companies, for which "over-rigid preoccupation with questions of structure" is inappropriate.  Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 18 (2d Cir. 1996).

Jabord's first two proffered facts, (i) the shared office and letterhead, and (ii) Hagg's email, are also minimally persuasive

because this motion does not raise the issue of whether to pierce the veil of a corporate subsidiary to reach its corporate parent. As defendants observe, "the issue before the Court is not whether Beacon should be liable for Brandstar's debt, nor whether Brandstar should be held liable for Beacon's debt: [t]he issue before the Court is whether the CEO -- Mark Alfieri -- should be personally liable for an otherwise corporate liability."  Reply at 2-3. Indeed, courts emphasize a smaller subset of the Passaquala factors when assessing whether an individual owner -- as opposed to a corporate parent -- dominated a corporation.  See Serv. Emps. Int'l Union, Loc. 32BJ v. Allied Cleaning & Maint. Corp., No. 23 Civ. 8403 (AT) (GWG), 2024 WL 2494620, at *6 (S.D.N.Y. May 24, 2024) (emphasizing "(1) the absence of [corporate] formalities, . . . (2) inadequate capitalization, [and] (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes.").  The fact that Brandstar and Beacon shared some resources is therefore of limited value given the absence of any specific allegations as to Alfieri's involvement.

Alfieri's ownership of the companies also does not warrant veil piercing.  As defendants observe, "the mere fact that an individual is the sole member, shareholder, or a controlling person in an entity does not . . . justify piercing the corporate veil." Mot. at 6 (quoting Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs., Inc., 952 F. Supp. 2d. 542, 578

13

(S.D.N.Y. 2013)); see also Heitler v. Museum Print Editions, Inc., 337 N.Y.S.2d 255, 256 (1st Dep't 1972) (per curiam) ("[F]acts showing interlocking directorships and stockholdings . . . form[] an insufficient basis upon which to pierce the corporate veil."). Individual owners regularly incorporate companies, and are allowed to do so, for the purpose of limiting their liability. Physicians Mut. Ins. Co. v. Greystone Servicing Corp., No. 07 Civ. 10490 (NRB), 2009 WL 855648, at *3 (S.D.N.Y. Mar. 25, 2009) ("[I]t is legitimate to incorporate to avoid personal liability," and such formalities will be respected absent a "showing that defendants have perverted the privilege.").

Finally, Jabord points to its allegation that the companies ceased operations and became "assetless shells" after Jabord demanded the return of its funds.[8]  Opp. at 7.  While "inadequate capitalization" is a relevant factor under Passalacqua, it is by no means dispositive, as one of the purposes of limited liability is to shield owners in the event of insolvency. Gartner, 607 F.2d at 586 (finding the fact that a company was "was thinly capitalized . . . is not a sufficient ground for disregarding the corporate form"); In re BH S & B Holdings LLC, 420 B.R. 112, 137 (Bankr.

---

[8]    Both Beacon and Brandstar are currently listed as "ACTIVE" companies on the Florida Secretary of State, Division of Corporation's website, and each re-registered with the Division of Corporations as recently as March 2026.  See infra p. 20 n.12.  Although "ACTIVE" companies could be operationally inactive or financially insolvent, it is clear that both companies still exist as distinct legal entities.

14

S.D.N.Y. 2009), aff'd as modified, 807 F. Supp. 2d 199 (S.D.N.Y. 2011) ("[I]t is a rare instance that the veil should be pierced because of undercapitalization, because otherwise every insolvent subsidiary would have its veil pierced.").

Inadequate capitalization is unpersuasive here because the FAC fails to plead either (i) when Jabord demanded its money back or (ii) when Beacon or Brandstar ceased operations and/or became insolvent. See infra Discussion Section I.b. (discussing the three-year gap in the pleadings between January 27, 2022, when the "Credit Memo" was sent, and December 20, 2024, when Jabord reached out to Beacon's counsel). Jabord's demand to return the funds and Beacon and Brandstar's insolvencies could have taken place months apart[9] both from each other and/or Jabord's demand. Thus, there is an insufficient basis to infer that one event was related to another. Sysco Food Serv. of Metro New York, LLC v. Jekyll & Hyde, Inc., No. 08 Civ. 2958 (BSJ) (JCF), 2009 WL 4042758, at *4 (S.D.N.Y. Nov. 17, 2009) (dismissing veil piercing claim because the "allegation regarding insolvency too vague to allege domination where nature . . . of defendants' insolvency [is] not specified").

### b. Fraud or Wrongdoing

---

[9]    The FAC's allegation that "[a]fter or about and around the time of converting Plaintiff's funds for Defendants' own purposes and uses Beacon ceaseed [sic] business operations and purportedly so did BrandStaras [sic]" is extremely ambiguous, and insufficient to permit an inference that there is a nexus between the various events.  FAC ¶ 29.

Even if Jabord had plausibly alleged that Alfieri "completely dominated" Beacon and/or Brandstar -- which it has not -- it has also failed to establish "a causal link between the control exerted over the corporation and the [alleged] fraud or other wrong." Shantou Real Lingerie Mfg. Co., 401 F. Supp. 3d at 444.   Jabord's pleadings regarding the "fraud or wrong" and Alfieri's supposed involvement therein are "conclusory allegations devoid of supporting factual detail."   Kaplan Grp. Invs. LLC, 694 F. Supp. 3d at 386; see also FAC ¶¶ 34-41.   For example, the allegation that Alfieri "commingled" Brandstar and Beacon's funds is unsupported by any fact.   FAC ¶ 38.   The FAC likewise fails to allege any details regarding when and how Alfieri allegedly "converted" Jabord's funds for his personal use.   Id. ¶ 34.

Jabord attempts to establish a causal link between Alfieri and the retention of the funds by arguing that Beacon and Brandstar closed in "an effort to avoid . . . liability to Jabord."   Opp. at 1; see also id. at 3-4 ("Beacon and Brandstar going out of business presented an opportunity for Alfieri to convert (instead of return) Jabord's money for his own benefit[.]").

Although insolvency or "cessation of business operations" may indicate an individual owner has stripped a company's assets, see Opp. at 9-10 (citing cases), Jabord's pleadings here are plainly distinguishable.   The FAC does not specify when Jabord demanded the return of the funds.   FAC ¶¶ 27-28.   Nor does it mention on

16

which date either company ceased business operations and/or became insolvent.  See id. ¶ 29 ("After or about and around the time of converting Plaintiff's funds . . . Beacon ceaseed [sic] business operations and purportedly so did BrandStaras [sic] asserted by their legal counsel as noted herein")[10]; Opp. at 9 (arguing that "Beacon and Brandstar . . . ceased operations after Jabord requested the return of its prepaid funds" but failing to state when either event occurred).  Indeed, the FAC is devoid of any dates for three years between Jabord's receipt of the "Credit Memo" email on January 27, 2022 and the January 3, 2024 email where Klein disclosed that Beacon was no longer operating.  Even accepting Jabord's ambiguous "after or about and around the time" allegations as true, Beacon and Brandstar could have closed months apart from one another, or months after Jabord demanded the return of its prepayment.  FAC ¶ 29.  Consequently, these pleadings fail to establish a plausible link between the alleged insolvencies, on the one hand, and any alleged wrongdoing by Alfieri.  Iqbal, 556 U.S. at 678; EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 513 (S.D.N.Y. 2005) (Sweet, J.) (finding allegation that "[individual defendant] knowingly undercapitalized these entities to be able to avoid obligations" was insufficient and

---

[10]    Beacon's counsel, Klein, mentioned only that Beacon is out of business, not Brandstar.   FAC ¶¶ 29, 32.   The FAC does not allege any other statement made by Klein or other counsel for defendants, or indeed any independent fact supporting the allegation that Brandstar closed or is insolvent.

17

that "[n]o nexus has been established between [individual defendant's] alleged undercapitalization of [corporate defendant] and the harm" to plaintiff).

It is difficult to square the allegation that Brandstar or Beacon shuttered their business as a response to Jabord's demand for the return of $165,000 with other facts of which the Court may take judicial notice. Of significance, both companies re-registered with the Division of Corporations each year, including in March 2026, and retain an "ACTIVE" status on the Florida Secretary of State, Division of Corporations website. See infra p. 20 n.12 (Brandstar registered on March 10, 2026 and Beacon on April 23, 2025). Moreover, because Jabord references it in its pleadings, see FAC ¶¶ 8-12, the Court takes judicial notice of Brandstar's website. See Home, https://brandstar.com/ (last accessed March 3, 2026). The professional website remains active and contains images showing a production studio, television equipment, constructed film sets, and a staff of 12 named executives and their headshots. About, https://brandstar.com/about (last accessed March 3, 2026). Even under the liberal pleading standards of Rule 12, it is not "plausible" that a business with this amount of overhead and payroll costs shut down "to avoid" a $165,000 debt.

In sum, Jabord has failed to plausibly allege either that Alfieri "dominated or controlled" Beacon or Brandstar or that he

used his position to commit a "fraud or wrong" against Jabord. Morris, 82 N.Y.2d at 141. Thus, the Court will not pierce the corporate veil to reach Alfieri's personal assets.

### III.    Futility or Impossibility

In a half-page argument, Jabord cites to the principle, arising from New York Business Corporation Law § 1006(b), that "where it is impossible or futile to obtain [a] judgment [against a defunct corporation], the creditor can maintain an action directly against the directors or shareholders . . . ." Opp. at 11-12 (quoting Flute v. Rubel, 682 F. Supp 184, 187 (S.D.N.Y. 1988)). Jabord argues that because Brandstar and Beacon are allegedly "assetless, empty shells," an action can be maintained directly against Alfieri as their shareholder/owner. Id. at 12.

The Court declines to apply this narrow principle of law to retain Alfieri as a defendant. "Normally, a creditor must exhaust his or her remedies against the [defunct] corporation by obtaining a judgment against it and having it returned unsatisfied." Eng v. Battery City Car & Limousine Serv., Inc., No. 00 Civ. 1615 (GEL), 2001 WL 1622262, at *8 (S.D.N.Y. Dec. 18, 2001). "Where this is impossible or futile, an action may be maintained directly against the directors or shareholders to the extent that they received from or continue to hold assets which were the corporation's." Id. (emphasis in original).

19

Here, Jabord has failed to plead any specific, non-conclusory facts that Alfieri "received" or "hold[s] assets which were the corporation's."  See supra Discussion Section II.b.  It has also failed to plead the impossibility of recovering on a judgment against Brandstar or Beacon.  Jabord overstates Klein's January 3, 2025 email as demonstrating the futility of proceeding against Beacon and Brandstar.  Opp. at 11-12.  Klein said that Beacon was "no longer in business," but made no mention of Brandstar.  FAC ¶¶ 29-31.  Even focusing on Beacon, there is an insufficient basis upon which to conclude that recovery is impossible.  In Rodgers v. Logan, which Jabord cites, the corporate defendant "underwent dissolution more than thirty years ago, making it futile for appellant to even attempt to sue it directly on his breach of contract claim."[11]  121 A.D.2d 250, 253 (1st Dep't 1986).  By contrast, Beacon allegedly went out of business only in the last few years, and there is insufficient proof that its affairs have been "fully adjusted" given it has continued to file annual reports with the Florida Secretary of State.[12]  See Next Millennium Realty,

---

[11]    The court in Rodgers, also pointed to veil piercing pleadings that "[the corporate defendant] did not appear to have any existence separate from [its individual owners]."  121 A.D.2d at 253.  Here, these facts have not been adequately alleged.

[12]    A cursory search of the Florida Secretary of State, Division of Corporations' website reveals that Beacon LLC, with Patricia Klein, Esq. as registered agent, and Mark Alfieri as manager, is still registered as "ACTIVE" and filed an annual report with the Division of Corporations as recently as April 23, 2025.  See Beacon LLC, Florida Department of State, Division of Corporations,                              accessible                              at https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquir

L.L.C. v. Adchem Corp., No. Civ. 03-5985(GRB), 2016 WL 1178957, at *6 (E.D.N.Y. Mar. 23, 2016), aff'd sub nom. Next Millenium Realty, LLC v. Adchem Corp., 690 F. App'x 710 (2d Cir. 2017) (citing Rodgers, 121 A.D.2d at 253).  Consequently, "[i]t being far from certain that a judgment against [the corporate defendants] ever will be obtained, or that any such judgment will not be paid [by the corporate defendants] if entered," the Court will dismiss the claims against Alfieri.  Eng, 2001 WL 1622262, at *8.

### IV.    Unjust Enrichment

Next, defendants argue that Jabord's unjust enrichment claim is duplicative of its breach of contract claim.  Mot. at 8-9; see also Reply at 5-6.  Unjust enrichment is a quasi-contract claim that is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized

---

ytype=EntityName&directionType=Initial&searchNameOrder=BEACON%20L190000108511&aggregateId=flal-l19000010851-2e9c9355-aea0-4ae0-b96d-4a2a374b485a&searchTerm=Beacon%20LLC&listNameOrder=BEACON%201415130 (last accessed March 11, 2026).  Brandstar, Inc., with Mark Alfieri as registered agent, likewise remains "ACTIVE," and filed an annual report on March 10, 2026. See Brandstar, Inc., Florida Department of State, Division of Corporations, accessible                                                              at https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=BRANDSTAR%20P150000748900&aggregateId=domp-p15000074890-8f2baa09-3fcc-4249-be27-d2b5292d9d6d&searchTerm=Brandstar%2C%20Inc.&listNameOrder=BRANDSTAR%20P150000748900 (last accessed, March 11, 2026).  Both companies have their principal address as 3860 N Powerline Deerfield Beach, FL 33073, the same address pleaded in the FAC.  FAC ¶¶ 2-4.  Our sister courts have taken judicial notice of "the contents of . . . records kept by [the] Florida Secretary of State" in similar circumstances.  Desclafani v. Pave-Mark Corp., No. 07 Civ. 4639 (HBP), 2008 WL 3914881, at *6 (S.D.N.Y. Aug. 22, 2008) ("Plaintiff's assertion [that corporate defendant 'did not survive'] is . . . contradicted by the records kept by the Florida Secretary of State, which reflect that Pave-Mark filed annual reports through 2000.") (citing Florida Department of State, Division of Corporations Website, http://www.sunbiz.org).

tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon N.Y., Inc., 944 N.Y.S.2d 732, 740 (2012).  However, "under New York law, a plaintiff may not recover under quasi-contract claims such as unjust enrichment where an enforceable contract governs the same subject matter."  Amable v. New School, No. 20 Civ. 3811 (KMK), 2021 WL 3173739, at *12 (S.D.N.Y. July 27, 2021).  Here, defendants have allegedly retained a fee paid under a valid, enforceable contract,[13] and thus the unjust enrichment claim must be dismissed as duplicative.  IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142 (2009) ("[T]he unjust enrichment claim cannot form the basis of IDT's demand that Morgan Stanley return the $10,000,000 fee paid . . . because that fee arose from services

---

[13]    Jabord argues that the unjust enrichment claim may be pled "in the alternative" because there is a "bona fide dispute" as to the existence or scope of the SOW.  Opp. at 14 (quoting Buonasera v. Honest Co., Inc., 208 F. Supp. 3d 555, 567–68 (S.D.N.Y. Sep. 23, 2016)).  Plaintiffs themselves do not dispute the existence, validity, or scope of the contract.  Id. at 14-15.  Rather, they insist that "[d]efendants dispute the enforceability of the [SOW]" because defendants previously "assert[ed] that the original Complaint did not specify the terms of the agreement nor draw a link between the terms and any improper conduct."  Id. at 14.  Jabord does not cite to where in the record defendants made these arguments.  However, the Court can infer from context that Jabord is referencing defendants' first Rule 2(B) letter filed before Jabord amended its complaint.  ECF No. 7.  In that letter, defendants argued that the "[original] complaint does not detail any contractual terms, nor does it draw a link between the terms to any improper conduct."  Id. at 3.  That argument is no longer relevant.  Jabord's original complaint was only four pages long and did not describe any contractual terms in the Statement of Work.  See ECF No. 1-1 ("Original Complaint").  Jabord has since filed the FAC, which is significantly longer and describes the Statement of Work in detail.  See FAC. Consequently, defendants are no longer moving to dismiss the breach of contract claim (as to Brandstar and Beacon), and their previous concerns with Jabord's complaint have been cured.  On this record, the Court finds that there is no bona fide dispute between the parties as to the existence, enforceability, or scope of the contract.

governed by a [valid and enforceable] engagement letter signed by IDT[.]").

Further, to the extent that plaintiff is seeking to assert an unjust enrichment claim against Brandstar, that argument is unavailing. The Statement of Work was signed by Beacon and Jabord and "constitutes the entire understanding between the parties" that "supersedes all prior agreements."[14] SOW at 2. Brandstar is not a signatory to the contract. However, "[t]he rule that an unjust enrichment claim does not lie where a valid, enforceable written contract governs the same subject matter extends to cases where one of the [defendants] was not a party to the contract." Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F. Supp. 2d 496, 504–05 (S.D.N.Y. 2007) (Koeltl, J.). This is the correct result where, as here, "[plaintiff] does not allege that [the non-signatory defendant] received any money other than [the] portion of the payments [plaintiff] made pursuant to its contract with [the signatory defendant]." Id.; see also JGB (Cayman) Newton, Ltd. v. Sellas Life Scis. Grp. Inc., No. 18 Civ. 3095 (DLC), 2018 WL 5266877, at *15 (S.D.N.Y. Oct. 23, 2018) (dismissing unjust enrichment claim as duplicative because "[t]he crux of the . . .

---

[14] The Statement of Work also contains provisions that may cover the substantive dispute: whether defendants were obligated to return the prepayment. See SOW at 2 ("By signing this scope of work, [Jabord] agrees to pay in full the total fee, regardless of if they choose to use any or all materials prepared on their behalf.").

unjust enrichment []claim is that the [non-signatory] defendants . . . received more shares of Sellas stock than [signatory] JGB was entitled to under the [contract] [such that] [r]esolution of the contract dispute . . . will necessarily resolve the issue of whether the . . . affiliated [non-signatory] defendants unfairly benefitted").

### V.    Conversion

Defendants also argue that the conversion claim is duplicative of the breach of contract claim.  Mot. at 9; Reply at 5-6.  "[E]ven if a plaintiff meets all of the elements of a conversion claim, the claim will still be dismissed if it is duplicative of a breach of contract claim."  AD Rendon Commc'ns, Inc., 2007 WL 2962591, at *4.  Here, the conversion claim must be dismissed because "the same facts make up [Jabord's] contract claim and its conversion claim"[15] and Jabord "seek[s] redress for . . . the same [$165,000] [in] damages."  Id.; see also JGB (Cayman) Newton, Ltd., 2018 WL 5266877, at *15.  Jabord's only cited case is not to the contrary.  See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) (dismissing a conversion claim because "the same facts make up the

---

[15]    Jabord argues that "[t]he failure to return the funds in accordance with the terms of the SOW is factually distinct from the intentional act of stealing Jabord's funds."  Opp. at 15.  However, these are not two distinct fact patterns but, rather, two different ways of characterizing the same event: as a "failure to return" versus "stealing."

breach of contract and conversion claims," and "plaintiffs seek the same relief for both claims") (citation omitted).[16]

## CONCLUSION[17]

For the preceding reasons, defendants' motion is granted in its entirety. ECF No. 14. All claims against Alfieri are dismissed. The unjust enrichment and conversion claims against Beacon and Brandstar are also dismissed. However, because defendants do not seek to dismiss the breach of contract or account stated claims as to Beacon or Brandstar, those claims will proceed to discovery.

Dated:    March 12, 2026
          New York, New York

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[16] The Ellington court also dismissed the conversion claim against non-signatory "Affiliates" of the signatory defendant because "[t]o the extent that the [non-signatory] SPS Affiliates were in a position to exercise 'unauthorized dominion' over any specifically identifiable property of the Plaintiffs, they were placed there by [signatory] SPS in violation of the PSA [contract]." 837 F. Supp. 2d at 204.

[17] Neither party has requested oral argument on the motion. Moreover, given that our holding is based on clear legal doctrine, the Court determined that oral argument would not be productive.